UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TERRI KARP, § § § **Plaintiff** § § v. § **FILE NO. 1:12-cv-985-LY** § § FINANCIAL RECOVERY SERVICES, § INC., § § **Defendant** § | |

### DEFENDANT'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Financial Recovery Services, Inc. ("FRS") files this Rule 56 Motion for Summary Judgment and Memorandum of Law in Support Thereof, and would respectfully show the Court:

### I.
### SUMMARY OF THE ARGUMENT

1. FRS seeks summary judgment as to Plaintiff's claims because: (1) Plaintiff's claims are without merit; (2) FRS ceased contact to Plaintiff's place of employment when asked; and (3) FRS did not harass Plaintiff.

### II.
### INTRODUCTION AND BACKGROUND

2. In Count I of Plaintiff's Complaint, Plaintiff alleges that FRS, as a debt collector, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c(a)(3) and 1692d for allegedly contacting her at work when FRS knew or should have known that Plaintiff was not able to receive such calls at work and for harassing Plaintiff, respectively.

___

3. In Count II of Plaintiff's Complaint, she alleges that FRS violated § 392.302(4) of the Texas Financial Code by making repeated calls to her place of employment with the intent to harass her.

4. For the reasons set forth herein, the entirety of Plaintiff's claims fail and Defendant is entitled to judgment as a matter of law.

## III.
## FACTS

5. On September 10, 2012, Plaintiff's First Bankcard Account ending 5002 was placed with FRS for collection.[1]  On September 11, 2012, at 8:02 a.m. (CST), FRS placed a telephone call to the number it had listed as Plaintiff's place of employment, which is designated in FRS' notes as "09/11/12 08:02 TE/TD" with TE meaning "telephoned place of employment."[2] At that time, FRS' collector Cindy Evenstad spoke with a woman who identified herself as Terri Karp.[3] However, when asked to provide a mailing zip code for verification purposes, Plaintiff refused to do so and said "You can send me anything by letter that would be great" and Plaintiff then hung up.[4]

6. On September 11, 2012, at 8:09 a.m., FRS requested that its initial letter be mailed to Plaintiff.[5] FRS then made calls to Plaintiff at her place of employment on the following dates: (1) 9/13/12 at 3:34 p.m. (CST), (2) 9/15/12 at 8:19 a.m. (CST), (3) 9/19/12 at 10:11 a.m. (CST), (4) 9/23/13 at 4:59 p.m. (CST), and (5) 9/25/12 at 9:00 a.m. (CST).[6] Out of the five calls, FRS only spoke with Plaintiff on 9/25/12.[7] During the 9/25/12 telephone call, Plaintiff advised that she could not receive such calls at work, FRS asked Plaintiff for a number

---

[1] Exhibit A at ¶ 3, Affidavit of Brian Bowers.
[2] *Id.* at ¶ 4.
[3] Exhibit B at p. 22:9-25 and p. 23:1-23, Deposition of Terri Karp.
[4] *Id.*
[5] Exhibit A at ¶ 5, Affidavit of Brian Bowers.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 6.

---

and address so that it could contact Plaintiff, Plaintiff refused to provide such information, but promised to call FRS.[8]  Plaintiff never kept her promise to call FRS.[9]

7. Upon Plaintiff's request that FRS cease phone calls to her place of employment, FRS ceased calls.[10]  This is indicated in FRS notes where it provides "09/25/12 09:01 WN/WN CEASE POE".[11]  FRS made no further calls to Plaintiff's place of employment after the referenced September 25 phone call.[12]

## IV.
## PLAINTIFF'S ALLEGATIONS

8. In Plaintiff's Complaint, she alleges that: (1) on or around September 12, 2012, she told FRS that she could not receive calls at work and advised FRS to stop such calls (Pl. Compl. ¶ 17); (2) Plaintiff again told FRS to stop calls to her place of work on or around September 13 or 14 (Pl. Compl. ¶ 18); (3) Plaintiff again asked FRS to stop calling her at work on or around September 19, 2012 (Pl. Compl. ¶ 19; (4) FRS told Plaintiff it would only remove her employment number if certain conditions were met (Pl. Compl. ¶ 22); and (5) FRS placed her job in jeopardy by making calls to her place of employment (Pl. Compl. ¶ 24).

9. However, Plaintiff's numerous allegations in her Complaint have been directly contradicted by her testimony, that of her boss, and the records provided by FRS.  As set forth above, FRS' collection notes and phone recordings differ from the claims alleged by Plaintiff.[13]  Moreover, Plaintiff has conceded that she does not dispute the accuracy of FRS' records.[14]  Finally, Plaintiff's boss, Tim Williams, confirmed that Plaintiff's job was never in jeopardy.[15]

---

[8] Exhibit B at pp. 29-31, Deposition of Terri Karp.
[9] Exhibit A at ¶ 7 and attached Exhibit thereto, Affidavit of Brian Bowers.
[10] *Id.* at ¶ 8 and attached Exhibit thereto.
[11] *Id*.
[12] Exhibit B at p. 32:17-19, Deposition of Terri Karp.
[13] Exhibit A at ¶ 7, Affidavit of Brian Bowers.
[14] *Id*. at p. 22:16-17, p. 29:1-5, and  p. 33:13-16.
[15] Exhibit C at p. 18:10-17, Deposition of Tim Williams.

10. On April 26, 2013, counsel for FRS provided Plaintiff's counsel with a letter, setting forth the facts and advising that Plaintiff's claims were completely without merit.[16] On June 21, 2013, FRS produced every recording it had related to Plaintiff's account via e-mail to Plaintiff's counsel.[17] Nonetheless, Plaintiff has steadfastly refused to dismiss her claims, despite possessing evidence that her recollection, and, therefore, her claims, were faulty.

## V.
## ARGUMENT AND AUTHORITES

### A. SUMMARY JUDGMENT STANDARD

11. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

12. If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.,* 340 F.3d 233, 235 (5th Cir.2003)). "If the moving party fails to meet its initial burden, the motion for

---

[16] Exhibit D at ¶ 2, Affidavit of Michael Poncin.
[17] *Id.* at ¶ 3.

---

summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 471 (5th Cir.2002) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)).

13.     When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a "scintilla" of evidence.'" *Little,* 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted).

**B.  FDCPA Standard**

14.     In evaluating whether a communication between a debt collector and a consumer violates the FDCPA, the communication must be viewed objectively from the perspective of either the "least sophisticated consumer" or the "unsophisticated consumer." *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1236 (5th Cir. 1997). The "least sophisticated consumer" standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Id.* The unsophisticated consumer standard is substantially similar, "except that it is designed to protect consumers of below average sophistication or intelligence without

having the standard tied to 'the very last rung on the sophistication ladder.'" *Id.* (*citing Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994)). The Fifth Circuit has explicitly declined to decide which of these standards to apply. *Id.; see also Goswami v. Am. Collections Enter., Inc.,* 377 F.3d 488, 495 (5th Cir. 2004) (noting both standards); *Peter v. G.C. Servs. L.P.,* 310 F.3d 344, 349 n.9 (again opting not to decide which standard governs because "the difference between the standards is at most de minimus"). Under either standard, courts must assume that the consumer is "neither shrewd nor experienced in dealing with creditors." *Goswami,* 377 F.3d at 495. However, the least sophisticated consumer is not to be treated as "irrational [or] a dolt." *Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir. 2010).

## C. ARGUMENT

15. FRS did not violate the FDCPA by allegedly contacting Plaintiff after she requested that phone calls cease, nor did FRS violate the FDCPA by allegedly harassing Plaintiff. Finally, FRS did not violate the TDCPA by making phone calls to Plaintiff.

### 1. FRS Did Not Violate The FDCPA

#### a. FRS ceased contact when requested

16. As set forth above, Plaintiff maintains that FRS violated the FDCPA by contacting her when it knew it should not and by harassing Plaintiff. However, as the facts indicate, Plaintiff did not tell FRS that she could not receive phone calls at work until September 25, 2012, at which time FRS ceased calls to Plaintiff's place of employment. Despite this, Plaintiff maintains that by saying "send me anything in writing", she intended to cease FRS.

17. Via conversations with Plaintiff's counsel, FRS anticipates that Plaintiff will argue that she thought that by saying, "You can send me anything by letter that would be great", was sufficient to cease FRS, and that the least sophisticated consumer standard supports her

belief. However, the least sophisticated consumer standard goes to whether communications are misleading or confusing, not whether a consumer believes they have ceased calls. Under Plaintiff's theory, anything said by a consumer would be sufficient to cease further communications as long as the least sophisticated consumer believed that it was a cease.

18. In this instance, Plaintiff said "You can send me anything by letter that would be great." Accordingly, minutes after the phone call, FRS' notes indicate that its initial debt collection letter was to be mailed to Plaintiff. Thus, FRS complied with Plaintiff's request. Moreover, simply asking that anything be sent in writing is not the same as requesting no more calls to a place of employment. Moreover, at no point and time during the initial call did Plaintiff request that calls cease. She merely asked for anything in writing, which FRS did when it sent its initial collection letter.

19. Plaintiff further maintains that she spoke with FRS on two other occasions, prior to September 25, 2012 and told FRS to cease calls to her place of employment. This is not supported by FRS records, nor has Plaintiff produced any evidence to support this claim. Indeed, Plaintiff has conceded that FRS' records are accurate and that her complaint was based merely upon Plaintiff's speculation.[18] Accordingly, as the only evidence indicates that FRS only spoke with Plaintiff on September 11 and 25, Plaintiff's allegation that she requested FRS to cease calling her at her place of employment during two other calls is simply without merit.

### b. FRS Did Not Harass Plaintiff

20. Plaintiff further maintains that FRS' actions amount to harassment. To determine whether a debt collector's calls amount to harassment, annoyance or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct. *See Udell v. Kansas Counselors, Inc.,* 313 F.Supp.2d 1135,

---

[18] Exhibit B at p. 22:16-17, p. 29:1-5, p. 33:13-16, Deposition of Terri Karp.

1143–44 (D. Kan.2004). Plaintiff carries the burden of showing that Defendant's calls were in violation of 15 U.S.C. § 1692d. *Kerwin v. Remittance Assistance Corp.,* 559 F.Supp.2d 1117, 1124 (D.Nev.2008). "Debt collectors do not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct (threatening messages)." *Pugliese v. Professional Recovery Service, Inc.,* 2010 WL 2632562, 10 (E.D. Mich.2010). "Any call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation of the FDCPA." *Martin v. Select Portfolio Serving Holding Corp.,* 2008 WL 618788, 6 (S.D.Ohio 2008).

21. Many courts have found that when a debtor is called numerous times without any other oppressive conduct the debtor fails to state a claim under 1962d. *See Pugliese,* 2010 WL at 10 (finding no harassment when debt collector made 350 calls over an eight-month period, only ten calls resulted in conversations, the remaining calls were not answered because plaintiffs recognized the number as the debt collector's); *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359, 7 (E.D.Mich.2009)(in case where plaintiff produced a log showing debt collector made sixty calls in a one-month period, sometimes several times a day, fifty of which went unanswered, court found the calls did not violate FDCPA); *Carman v. CBE Group, Inc.,* 782 F.Supp.2d 1223, 1227 (D.Kan.2011)(seven calls per day for a total of 149 calls over a two month period did not violate FDCPA)[19].

---

[19] *See also Daniel v. West Asset Management, Inc.,* 2011 WL 5142980 at *4 (E.D. Mich. Oct. 8, 2011*)* (67 calls during a six month period with no calls before 8 a.m. or after 8:00 p.m., no immediate call backs, and no response to defendant's telephone calls was not a violation); *Pugliese v. Prof. Recovery Serv. Inc.,* 2010 WL 2632562 at *9 (E.D. Mich. June 29, 2010) (350 calls during an eight month period alone was insufficient for a violation); *Saltzman,* 2009 WL 3190359 at *6-7 (20-50 unsuccessful calls and 2-10 successful calls in one month was not a violation); *Tucker v. The CBE Group, Inc.,* 710 F.Supp.2d 1301, 305-06 (M.D. Fla. 2010) (57 calls to non-debtor, including 7 on one day, only 6 messages left in total was not a violation); *Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (allegations of "daily" or "nearly daily" phone calls alone do not raise an issue of fact as to these claims); *Jiminez v. Accounts Receivable Mgmt., Inc.*, 2010 WL 5829206 at *5 (C.D. Cal. Nov. 15, 2010)

22. In this instance, FRS place a total of 6 telephone calls to Plaintiff's place of work and ceased when requested. In addition, FRS ceased contact with Plaintiff when requested, sent her a letter when she requested that "anything" be mailed to her and did not otherwise act in a harassing, oppressive or abusive manner. Moreover, each call made to Plaintiff's place of work was done in an attempt to collect a debt from Plaintiff that she owed.[20] There was no other intent for such calls.[21]

23. Accordingly, as the only evidence indicates that FRS made a mere six phrone calls, on different days and never after Plaintiff hung up the phone or ceased it, FRS did not harass Plaintiff under the FDCPA and Plaintiff's claim must be dismissed.

### 2. FRS Did Not Violate the Texas Debt Collection Practices Act

24. TEX. FIN. CODE § 302.302(4) provides that "a debt collector may not oppress, harass, or abuse a person by … causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Just as in cases under the FDCPA, Texas courts that have considered this issue treat it as courts have done under the FDCPA. As one court has stated:

> Because there are few cases applying § 392.302(4) or prescribing what evidence demonstrates an intent to harass, the court also looks to cases interpreting the similar provision of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d(5). Section 1692d(5) prohibits "[c]ausing a telephone to ring or

---

(69 calls over 115 days, no live contact, one voice mail left, no more than 2 calls/day, except for a single day in which there were 3 calls is not a violation); *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350 at *6 (M.D. Fla. Dec. 16, 2010) (holding that 132 calls over 7 months was not a violation of the FDCPA); *Jones v. Rash Curtis & Associates*, 2011 WL 2050195 at *3 (N.D. Cal. Jan. 3, 2011) (holding that 200 calls over a year is not a violation); *Carmen,* 782 F.Supp.2d at 1232 (holding that 149 calls over a two month period is not a violation); *Katz v. Capital One,* 2010 WL 1039850 at *3 (E.D. Va. Mar. 18, 2010) (15-17 calls after creditor notified of attorney representation, not more than 2 calls/day, no inconvenient times, no requests to stop, no calls after consumer hangs up held not a violation); *Chavious v. CBE Group, Inc.,* 2012 WL 113509 at *3-4 (E.D.N.Y. Jan. 13, 2012) (36 calls in two month period with calls between 8:00 a.m. and 9:00 p.m. was not a violation); *Webb v. Premiere Credit of North America, LLC*, 2:12-cv-02001, Doc. No. 46, J. Robinson (D. Kan. Oct. 22, 2012) (150 calls in 6 months on continuous days and as much as six calls per day but no contact with plaintiff was not a violation).

[20] Exhibit A at ¶ 9, Affidavit of Brian Bowers.
[21] *Id.* at ¶ 9.

---

engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Under this statute, intent to harass "may be inferred from the frequency, pattern, or substance of the telephone calls that [the debtor] received from the debt collector or the place to which the calls were made." *Young v. Asset Acceptance, LLC,* 2011 WL 1766058, at *3 (N.D. Tex. May 10, 2011) (Ramirez, J.); *see also Pugliese v. Prof'l Recovery Serv., Inc.,* 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) (considering "volume of calls . . . along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct"). "There is no bright line rule as to the specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy, abuse, or harass; courts simply disagree on the amount or pattern of calls needed to raise a triable fact issue." *Young,* 2011 WL 1766058, at *3. While such a claim under the TDCPA or FDCPA is fact intensive, *see Smith v. ProCollect, Inc.,* 2011 WL 1375667, at *6 (E.D. Tex. Apr. 12, 2011), to survive summary judgment a plaintiff of course must still adduce evidence sufficient for a reasonable jury to find an intent to harass.

*Enis v. Bank of America, NA,* Dist. Court, ND Texas 2013.

25.   In this instance, FRS made only six phone calls to Plaintiff's place of employment, a fact to which Plaintiff has now conceded, despite her claim in her Complaint that FRS called her constantly.  Plaintiff has failed to produce any evidence that FRS intended to harass her and the only evidence indicates that FRS was seeking to collect a debt.  FRS did not call Plaintiff more than once on any day and never after a hang-up call.  Absent proof by Plaintiff of intent to harass by Plaintiff, her TDCPA claim fails.  *See O'DEA v. Wells Fargo Home Mortgage,* 2013 WL 441461 (S.D. Tex) (granting summary judgment as the plaintiff failed to produce any evidence that calls were made "with the intent to harass a person at the called number."); *Montoya v. Bluebonnet Financial Assets,* 2010 WL 4261481 (Tex.App.-Fort Worth) (holding that while calls may have been unwanted, the plaintiff produced no evidence that calls were made with the intent to harass) (judgment later vacated, but opinion not altered); *Stapp v. Bank of America,* 2012 WL 3853440 (E.D. Tex.), Rep't and Rec. *adopted* by 2012 WL 4502426 (dismissing a 392.302(4) claim because "Plaintiffs have failed to state any facts that would indicate that Defendant's alleged conduct was harassing or abusive in any way. Moreover, there

are no facts alleged that would indicate Defendants made repeated or continuous phone calls intended to harass Plaintiffs.").

26.     Accordingly, as there is no evidence indicating that FRS intended to harass Plaintiff, FRS is entitled to summary judgment as a matter of law.

## VI.
## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant Financial Recovery Services, Inc. respectfully requests that this Court grant this Motion for Summary Judgment and dismiss with prejudice Plaintiff's claims, or, in the alternative, the Court enter an order which specifies the uncontroverted facts in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**SMITH, ROBERTSON, ELLIOTT & DOUGLAS, LLP**

By: */s/ A. Lee Rigby*
    A. Lee Rigby
    State Bar No. 24029796

221 West Sixth Street, Suite 1100
Austin, Texas 78701
Telephone:  (512) 225-5800
Telecopier:  (512) 225-5838
lrigby@smith-robertson.com

and

Michael S. Poncin
MOSS & BARNETT, PA
4800 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:  (612) 877-5000
Telecopier:  (612) 877-5999
Poncin@moss-barnett.com

**ATTORNEYS FOR DEFENDANT FINANCIAL RECOVERY SERVICES, INC.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 16, 2013, I electronically filed a true and correct copy of Defendant's Rule 56 Motion for Summary with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record listed below by operation of the Court's electronic filing system.

Mr. Ryan Lee
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Ste. 405,
Los Angeles, California 90025

    */s/ A. Lee Rigby*