**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TERRI KARP** | § | |
| | § | |
| **v.** | § | **A-12-CA-985 LY** |
| | § | |
| **FINANCIAL RECOVERY SRVCS, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Rule 56 Motion for Summary Judgment and Memorandum of Law in Support Thereof (Dkt. No. 23) filed October 16, 2013; Plaintiff's Response in Opposition (Dkt. No. 25) filed November 5, 2013; and Defendant's Reply (Dkt. No. 27) filed November 12, 2013. The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

In her Complaint, Plaintiff Terri Karp ("Karp") claims that Defendant Financial Recovery Services, Inc. ("FRS") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") (Claim I), and Section 392.302(4) of the Texas Finance Code (Claim II) by calling Plaintiff at her place of employment about money she owed a credit card company.

**I.  Karp's Complaint**

Plaintiff Terri Karp ("Karp") resides in Fredericksburg, Texas, and teaches at a private school there. Plaintiff's Exhibit B, Deposition of Terri Karp ("Karp Depo.") at 11. In her Complaint, Karp alleges that FRS contacted her on September 12, 2012, at her place of employment, and that she informed the FRS representative, Cindy Evenstad, that she cannot receive phone calls at work and advised FRS that calls to her place of employment must stop. Complaint at 2. Karp further alleges

that on around September 13 or 14, FRS again called her at her place of employment, and Karp again asked FRS to stop calling her at work. *Id.* at 2-3. Karp alleges that she received another call on September 19, 2012 and she again informed FRS that she was not allowed to receive calls at work. *Id.* Karp pleads that FRS called her workplace again on September 20, 2012, but she was unable to answer the call. *Id.* Lastly, Karp pleads that she received another call from FRS at her place of employment, on September 25, 2012, and informed Evanstad that she cannot receive calls at work. *Id.* Karp alleges that Evanstad informed Karp that she would remove her work number from the file if Karp would meet certain conditions. *Id.*

Karp alleges that FRS violated the FDCPA by calling Karp at her place of employment when FRS knew or should have known that Karp's employer prohibits such calls. Karp also alleges that FRS's behavior was harassing or annoying as defined by the statute. Karp finally alleges that FRS violated the Texas debt collection statute by making repeated telephone calls to Karp at her place of employment with the intent to harass her.

## II.  Summary Judgment Standard

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)).   Factual

controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.  Analysis

**A.      The FDCPA**

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," as defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA creates a private cause of action against debt collectors who violate its provisions.  *See* 15 U.S.C. § 1692k.

Karp contends that FRS violated sections 1692c and 1692d of the FDCPA. Section 1692c prohibits a debt collector from communicating "with a consumer in connection with any debt . . . at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. §

3

1692c(a)(3). Section 1692d prohibits a debt collector from "engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

**B.    Summary Judgment Evidence**

Defendant FRS offers the following summary judgment evidence, which is undisputed by Karp. Contrary to what Karp alleged in her complaint, the undisputed evidence demonstrates that an FRS representative only spoke with Karp on two occasions—on September 11, 2012, and September 25, 2012.[1] The evidence also demonstrates that what Karp alleged she had told FRS about calling her at work was not in fact what she had said. On September 10, 2012, Karp's First Bankcard Account was placed with FRS for collection. Defendant's Exhibit A, Affidavit of Brian Bowers ("Bowers Aff.") at ¶ 3. On September 11, 2012, at 8:02 a.m. (CST), FRS placed a telephone call to the number it had listed as Plaintiff's place of employment, which is designated in FRS's notes as "09/11/12 08:02 TE/TD" with TE meaning "telephoned place of employment." *Id.* at ¶ 4. At that time, FRS's collector, Cindy Evenstad spoke with a woman who identified herself as Terri Karp. Karp Depo. at 22:9-25, 23:1-23. The full text of the conversation was as follows:

UNIDENTIFIED SPEAKER:  Fredericksburg Christian School.

AGENT CYNTHIA:  Terri Karp please.

UNIDENTIFIED SPEAKER:  Yes, ma'am, one moment.

AGENT CYNTHIA:  Thank you.

MS. KARP:  Hello, this is Terri.

---

[1]FRS recorded the calls that it made to Plaintiff, and thus there are transcripts of the calls contained within the deposition of the Plaintiff. References in the text to the calls and quotations from them, come from these recordings.

AGENT CYNTHIA:  Hi.  This is Terri Karp?

MS. KARP:  Yes, it is.

AGENT CYNTHIA:  Hi, Ms. Karp, may name is Cindy Evanstad, I am calling from FRS on a recorded line for quality assurance training and compliance purposes.  Just want to touch base with you here real briefly, I am calling on behalf of First Bank of Omaha.  For verification purposes, can you provide me with your zip code, please?

MS. KARP:  No, I will not.

AGENT CYNTHIA:  And why?

MS. KARP:  You can send me anything by letter that would be great.

AGENT CYNTHIA:  Are you still at 187 --

The call ended mid-question because Karp hung up.  Karp Depo. at 22-23.  Seven minutes after this call, on September 11, 2012, at 8:09 a.m., Evanstad requested that a letter be mailed to Karp. Bowers Aff. at ¶ 5.

Subsequent to this call on September 11, 2012, FRS made five additional calls to Plaintiff at her place of employment.  The calls were made on the following dates and times (all CST):

- 9/13/12 at 3:34 p.m.

- 9/15/12 at 8:19 a.m.

- 9/19/12 at 10:11 a.m.

- 9/23/13 at 4:59 p.m.

- 9/25/12 at 9:00 a.m.

*Id.* at ¶ 6.  Out of the five calls, FRS only spoke with Plaintiff on 9/25/12. *Id.*  During the 9/25/12 telephone call, Plaintiff advised that she could not receive such calls at work, FRS asked Plaintiff for a number and address so that it could contact Plaintiff, Plaintiff refused to provide such

information, but promised to call FRS back, Karp Depo. at pp. 29-31, though she never did so, Bowers Aff. at ¶ 7 and attached exhibits.   After the September 25, 2012 call, FRS never phoned Plaintiff at her place of employment again. *Id.* at ¶ 8 and attached exhibits;[2] Karp Depo. at 32:17-19. Defendant further offers into evidence the testimony of Karp's supervisor, Tim Williams, who testified that he was unaware of the calls to Karp at work, and that Karp was never disciplined related to any calls. Defendant's Exhibit C, Deposition of Tim Williams ("Williams Depo.") at 7, 15.   Karp also testified that she was allowed to receive personal calls at work. Karp Depo. at 14.

## C.   Least Sophisticated/Unsophisticated Consumer Standard

Karp asserts that the "least sophisticated debtor" or "unsophisticated debtor" standard is applicable in this case.[3]   In determining whether a debt collector has committed a violation, the debt collector's representations, notices, and communications to the consumer are viewed objectively, from the standpoint of the "least sophisticated" or an "unsophisticated consumer." *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (citations omitted); *accord Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).   While such a consumer is assumed to be "neither shrewd nor experienced in dealing with creditors," she "should not be considered as tied to the very last rung on the intelligence or sophistication ladder." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004).   "This standard serves the dual purpose of protecting all

---

[2]The relevant notation in FRS notes states "09/25/12 09:01 WN/WN CEASE POE".

[3]Although the Fifth Circuit has not yet chosen between the standards of least-sophisticated consumer and unsophisticated consumer, the Circuit has explained that the unsophisticated consumer standard "serves the same purposes [as the least-sophisticated consumer standard] and apparently would lead to the same results in most cases, except that it is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder." *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012).

consumers, including the inexperienced, the untrained, and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Gonzalez*, 577 F.3d at 603 (citing *Taylor*, 103 F.3d at 1236).

The situation here is slightly different than most where this standard is employed.  Rather than using the standard to make an objective determination of what Karp understood she was being told *by* FRS, Karp asks that the Court employ the standard to determine what Karp believed she was communicating *to* FRS, and to determine how FRS should have understood her communication. It is far from clear that the unsophisticated or least sophisticated debtor standard is even applicable to this situation.  Karp is invoking § 1692c of the FDCPA, which is focused on what the collector "knows or has reason to know," not what the consumer understands.  Having said this, the way in which the standard may have some applicability here was expressed by the Seventh Circuit: "Unsophisticated consumers whatever else may be said about them, cannot be expected to assert their § 1692c(a)(3) rights in legally precise phrases." *Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 773 (7th Cir. 2003).  The implication here is that a reasonably sophisticated bill collector should not expect an unsophisticated debtor to use "legally precise" terms to inform the collector that work calls are off limits.  Thus, while the Court agrees with Karp that she is not to be held to a high standard with regard to communicating a desire not to receive calls at work, the issue remains one focused objectively on what FRS knew or should have known, not subjectively on what Karp intended.

**D.      Fact Question or Question of Law**

Karp argues that whether or not her statement "You can send me anything by letter – that would be great" was sufficient to put FRS on notice that she could not receive calls at work raises a fact question negating the possibility of summary judgment.  FRS asserts that the issue presents a question of law.  In the Fifth Circuit, whether a debt collection letter, or a portion thereof, would mislead or deceive an unsophisticated or a least sophisticated consumer is a question of fact.  *See Gonzales*, 577 F.3d at 603, 605–06; *see also id.* at 607 (Jolly, J., dissenting) ("I believe that the majority takes the wrong road in turning to a jury to decide what is a legal question in a case involving no factual disputes.").  In *Gonzalez*, the Fifth Circuit reversed the district court's grant of summary judgment for a debt collector because the court concluded that a fact issue remained regarding whether the collection letter at issue would deceive the unsophisticated consumer.  *Id.* at 606–07.  However, the he Fifth Circuit also explained that:

> There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer.  At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law . . . In the middle, there are letters that include contradictory messages and therefore present closer calls.

*Id.* at 606; *see also Langley v. Weinstein & Riley*, 2013 WL 2951057 (S.D. Tex. 2013).  It is a bit more difficult for a court to apply this standard in the context of a communication from the debtor to the creditor.  In that regard, however, the communications here were recorded, thereby eliminating any question about the words spoken.

**E.      Karp's 15 U.S.C. § 1692c Claim**

As noted, Karp contends that FRS violated § 1692c when it called her at work after her statement, "You can send me anything by letter that would be great."  Section 1692c prohibits a

collector from calling a consumer at work if the collector knows or should know that the consumer is prohibited from receiving such calls. The Court does not believe there are any fact questions to resolve in ruling on this issue. As a matter of law, from the statement Karp made to Evanstad, FRS did not "kn[o]w or ha[ve] reason to know that the consumer's employer prohibits the consumer from receiving such communication." One of the cases Karp relies on—*Horkey v. J.V.D.B.*— demonstrates the point well. In that case the court was deciding whether the statement "I cannot talk to you at work," followed by asking the collector to give the debtor his phone number so she could call him back from home, was sufficient to put the collector on notice under § 1692c(a)(3). The collector argued that the statement was "susceptible to various interpretations and that [the collector] therefore was in no position to know that Horkey's employer prohibited her from receiving debt-related communication at work." *Id.* The Seventh Circuit disagreed, holding that *"*when a consumer states in plain English that she cannot speak to the debt collector at work" then she has put the debt collector on notice for purposes of § 1962c(a)(3)*. Id.* What is lacking here, but was present in *Horkey* is any "plain English" statement by Karp that FRS was not to call her at work.

Karp argues that her intent in asking FRS to send her a letter was to have FRS not call her at work, and she based this on research she and her husband had conducted on the internet. Dkt. No. 27 at 7. She contends that because FRS is the party with a duty not to call a consumer at work if it knows or has reason to know that such calls are prohibited by the employer, her subjective intent is enough to create a fact question for the jury. *Id.* This misunderstands the issue. The question is not what Karp thought she was communicating to FRS. Rather, the question is what FRS knew or should have known regarding the school's policy regarding permitting employees to receive calls at work. Karp's assertion that she somehow communicated information about that issue when she

told FRS it would be "great" if it would "send me anything by letter" is untenable. Nothing in that statement could reasonably be viewed as communicating to FRS that the Fredericksburg Christian School prohibited Karp from receiving calls from debt collectors at work. Indeed, as noted earlier, Karp testified that she actually *was* allowed to take personal calls at work "on a limited basis" and that the school had no policy about taking personal calls at work. Karp Depo. at 14. The school administrator testified he was unaware that Karp received calls from a collection agency at school, and that Karp had never been disciplined for any calls. *Id.* Williams Depo at 7, 16. Finally, once Karp communicated to FRS that she could not receive calls at work, stating "This is a place of employment and you should not call me here," the calls ceased. Karp. Depo. at 30, 32. This buttresses the obvious conclusion that Karp's earlier statement that it would be "great" if FRS mailed her a letter did not communicate a prohibition against receiving calls.

None of these facts are in dispute. As a matter of law, Karp has failed to submit summary judgment evidence that "would permit a reasonable jury to return a verdict for the nonmoving party." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). Accordingly, summary judgment in favor of FRS is proper on Karp's 15 U.S.C. § 1692c(a)(3) claim and this claim should be dismissed with prejudice.

**F.      Karp's 15 U.S.C. § 1692d Claim**

The FDCPA prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d). This provision of the FDCPA lists nonexclusive examples of the type of conduct prohibited by the Act as including: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* at

§1692d(5).  Under this statute, intent to harass "may be inferred from the frequency, pattern, or substance of the telephone calls that [the debtor] received from the debt collector or the place to which the calls were made." *Young v. Asset Acceptance, LLC*, 2011 WL 1766058, at *3 (N.D. Tex. May 10, 2011) (Ramirez, J.); *see also, Coleman v. Credit Mgmt., LP*, No. 3:10–CV–2312–M, 2011 WL 5248219, at *3 (N.D. Tex. Nov. 2, 2011) (collecting cases); *see also Pugliese v. Prof'l Recovery Serv., Inc.*, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) (considering "volume of calls . . . along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct").  "There is no bright line rule as to the specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy, abuse, or harass; courts simply disagree on the amount or pattern of calls needed to raise a triable fact issue." *Young*, 2011 WL 1766058, at *3. While such a claim under the FDCPA is fact intensive, *see Smith v. ProCollect, Inc.*, 2011 WL 1375667, at *6 (E.D. Tex. Apr.12, 2011), to survive summary judgment a plaintiff must still adduce evidence sufficient for a reasonable jury to find an intent to harass.

Courts have noted that "[a] remarkable volume of telephone calls is permissible under FDCPA jurisprudence." *Zortman v. J.C. Christensen & Associates, Inc.*, 870 F.Supp.2d 694, 707 (D. Minn. 2012) (citing *VanHorn v. Genpact Servs., LLC*, No. 09–1047–CV–S–GA F, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (114 calls in a four-month period); *Carman v. CBE Grp., Inc.*, 782 F.Supp.2d 1223, 1232 (D. Kan. 2011) (149 calls in a two-month period); *Clingaman v. Certegy Payment Recovery Servs.*, No. H–10–2483, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (55 calls over three-and-a-half months); *Tucker v. The CBE Group, Inc.*, 710 F.Supp.2d 1301 (M.D. Fla. 2010) (57 calls, including 7 in one day)).  In this case, the summary judgment evidence is undisputed that FRS called Karp six times over a two-week period and only spoke to her on two

occasions. The first occasion when the FRS representative spoke to Karp was the September 11, 2012, call which was placed at 8:02 a.m., and Karp hung up on the representative after stating that sending her a letter would be "great." The second call was placed on September 25, 2012, at 9:00 a.m. In that call, Karp requested that FRS not contact her at her place of employment and FRS complied with that request. The other four calls went unanswered.

FRS's six calls to Plaintiff over a two-week period, even viewed in the light most favorable to Karp, do not raise a genuine issue of material fact regarding whether FRS violated the FDCPA in contacting Karp. This is consistent with the case law set out in the previous paragraph *See also Bell v. CSD Collection Specialist*, Slip Copy, 2013 WL 311841 (M.D. La. 2013) (holding that collector's five calls to plaintiff on four days over a thirteen day period did not raise a genuine issue of material fact regarding whether debt collector harassed debtor); *Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135 (Dist. Kan. 2004) (fact that debt collector placed four automated telephone calls to consumers over course of seven days without leaving message did not, as matter of law, constitute harassment under FDCPA).

This is not a case where a debt collector called multiple times a day or at odd hours. This is not a case where the debt collector immediately called back after an unanswered call or a hangup. This is not even a case where a debt collector made daily calls. *See Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744, 747 (W.D. Tex. 2011) (upholding jury finding of intent to harass under FDCPA where collection agency called debtor at least 134 times in 40–day period, phoned both of her telephones simultaneously, violated company policy about waiting 10 days to call again if debtor requested that calls stop, and threateningly implied that high volume of calls would not stop until debt was paid); *Young*, 2011 WL 1766058, at *3 (denying summary judgment on § 1692d(5) claim

where agent called three times per day on at least two occasions, called 33 times over a period of 73 days, and called before 8:00 a.m. and after 9:00 p.m.); *Kuhn v. Account Control Tech., Inc.*, 865 F .Supp. 1443, 1452–53 (D. Nev. 1994) (six telephone calls in 24 minutes constituted harassment in violation of § 1692d(5)); *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 873 (D. N.D. 1981) (when a call was terminated and collection agency called back immediately, the subsequent call alone could constitute harassment under § 1692d(5)); *Sanchez v. Client Services, Inc.*, 520 F.Supp.2d 1149 (N.D. Cal. 2007) (actions of debt collectors seeking to collect consumer's debt, including making 54 telephone calls to consumer at work and leaving 24 messages on work answering machine, allegedly in an attempt to obtain consumer's location information, were intended to annoy, abuse and harass consumer, in violation of FDCPA).

Karp relies upon the fact that the calls were made to her place of employment as sufficient to withstand summary judgment on the issue of harassment.  However, Karp fails to cite to any case where simply calling a consumer's place of employment, standing alone, was found sufficient to overcome summary judgment.  Karp relies upon *Arteaga v. Asset Acceptance*, 733 F.Supp.2d 1218, 1228 (E.D. Cal. 2010), for the proposition that calls made by the debt collector to the consumer's workplace constitutes evidence of harassment.  However, a close review of *Arteaga* establishes that the cases upon which that court relies for that particular proposition are not on point.  For example, in *Gilroy v. Ameriquest Mortg. Co.*, 632 F.Supp.2d 132 (Dist. N.H. 2009), the court held that intent to harass could be inferred by evidence that a debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient.  In *Sanchez v. Client Services, Inc.*, 520 F.Supp.2d 1149 (N.D. Cal. 2007), the court found that a debt collector's 54

telephone calls to a consumer at work, and leaving 24 messages on work answering machine, qualified as annoying, abusive and harassing in violation of the FDCPA and Rosenthal Act. *See also, Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (Dist. Nev. 2008) (repeated calls to a plaintiff's workplace, after the plaintiff notified the collector not to call her at work, constituted conduct whose natural consequence is to harass). Karp relies on cases in which there was a large number of calls to the workplace involved or where the debtor clearly requested that the calls to the workplace cease and the debt collector continued to call the debtor at work. Those are not the facts of this case. Moreover, even in *Arteaga*, that Court found that the plaintiff had proffered insufficient evidence of harassment to survive summary judgment. 733 F.Supp.2d at 1229.

In this case, Karp has offered no evidence from which a reasonable jury could find an intent to harass. All of the evidence shows that FRS placed its calls to Karp with the intent to reach her to collect the debt, and not to annoy, abuse, or harass her. Summary judgment is appropriate for this claim.

## G.    Karp's Texas Debt Collection Practice Act Claim

Karp also pleads a claim pursuant to the Texas Finance Code. TEX. FIN. CODE § 302.302(4) provides that "a debt collector may not oppress, harass, or abuse a person by … causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." FRS moves for summary judgment on this claim on essentially the same grounds as the two federal claims. The only response Karp makes to this argument is a statement that she "agrees to voluntarily dismiss" this claim, though she "does not agree to the entry of summary judgment" on the claim. Dkt. No. 25 at 12. FRS notes that Rule 41

does not permit a voluntary withdrawal at this stage, and requests that the Court enter summary judgment on the claim based on the arguments and evidence contained in its motion.

The basic rule governing Karp's request for dismissal is set out in Rule 41, which prohibits the plaintiff from unilaterally dismissing a claim or a case after an answer or motion for summary judgment has been filed. FED. R. CIV. P. 41(a)(1)(A)(i).   The Fifth Circuit has explained that the purpose of Rule 41(a) is "to permit a plaintiff to take the case out of the court at an early stage if no other party will be prejudiced.  The filing of an answer or a motion for summary judgment is a bright-line way to determine when that early stage has ended." *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979).  In deciding whether to permit the withdrawal of a claim, voluntary dismissal should be freely granted "unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Hyde v. Hoffmann–La Roche, Inc.*, 511 F.3d 506, 508 (5th Cir.2007) (citations omitted).  Although the "mere prospect of second lawsuit" is not enough to show plain legal prejudice, *id.*, when a plaintiff waits until "[a]fter the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325,330 (5th Cir.2003).  This is just such a case.

Karp filed this lawsuit fourteen months ago.  The parties have conducted their discovery, the discovery deadline having ended on September 6, 2013, and the case is set for a final pretrial conference in March 2014, with trial in April.  Permitting the plaintiff at this late date to avoid the disposition of a state law claim that is based on the identical facts as a parallel federal claim will cause plain legal prejudice to FRS.  Given the significant time and effort expended to get the case ready for resolution, the proper exercise of the Court's discretion under Rule 41 is to deny Plaintiff's

request that she be permitted to dismiss the Texas Finance Code claim without prejudice, and to grant summary judgment on the claim based on the arguments discussed in the prior section.

## III.  RECOMMENDATIONS

For the reasons set forth above, the Magistrate **RECOMMENDS** that  Defendant's Rule 56 Motion for Summary Judgment and Memorandum of Law in Support Thereof (Dkt. No. 23) be **GRANTED** and that all of Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 18th day of December, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE